Joe Lee SIMMONS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–07–00543–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 12, 2009.

Discretionary Review Refused
July 1, 2009.

Joe Lee Simmons, Huntsville, pro se.

Randy McDonald, Randy McDonald, P.C., Houston, TX, for Appellant.

Patricia R. Lykos, Harris County Dist. Atty., Alan Curry, Chief Prosecutor, Harris County Dist. Atty's Office, Bridget Holloway, Assistant District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, KEYES, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

A jury found appellant, Joe Lee Simmons, guilty of possession of a controlled substance, namely cocaine, weighing 4 or more grams but less than 200 grams.[1]

---

**1.** *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Vernon Supp.2008),

After finding allegations of two prior felony convictions to be true, the jury assessed appellant's punishment at 55 years in prison. In four issues, appellant challenges the trial court's denial of his motion to suppress, complains the trial court erred by admitting the testimony of the State's forensic chemist, and asserts that the trial court erred by permitting the amendment of one of the enhancement allegations in the indictment.[2]

We affirm.

## Background

On November 5, 2003, Officer T. Carr of the Houston Police Department was patrolling a high crime area of Houston in his police cruiser. Officer Carr noticed appellant standing in a moving lane of traffic. The officer then saw appellant "littering pieces of paper on the street." After pulling into a parking lot, Officer Carr approached appellant and asked appellant for identification. Appellant told Officer Carr that he did not have identification.

Officer Carr explained to appellant that, because appellant did not have identification, the officer could not issue a written citation to appellant for improperly disposing of the paper. Instead, police department policy required the officer to arrest appellant for the "littering" violation. At that point, Officer Carr placed appellant under arrest. Officer Carr then conducted a search of appellant incident to arrest. In appellant's shirt pocket, the officer found appellant's Texas identification card and a bottle containing a substance later determined to be cocaine.

Appellant filed a motion seeking to suppress the evidence recovered as a result of Officer Carr's search. Following a evidentiary hearing, the trial court denied appellant's motion.

## Motion to Suppress

Appellant's first two issues contain challenges to the trial court's denial of his motion to suppress.

### A. Standard and Scope of Review

We review a trial court's ruling on a motion to suppress for abuse of discretion. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App.2006). We reverse the trial court's ruling only if it is outside the zone of reasonable disagreement. *See id.* In conducting our analysis, we must view all of the evidence in the light most favorable to the trial court's ruling. *See State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim.App.2008). We sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *See Dixon*, 206 S.W.3d at 590. We give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law of search and seizure to those facts. *See id.*

### B. Reasonable Suspicion for Stop and Detention

■ In his first issue, appellant presents two arguments challenging the trial court's motion to suppress ruling. Appellant first contends that Officer Carr's stop and detention of him was "illegal."

■ An officer conducts a lawful temporary detention when he has reasonable

§ 481.112(a), (d) (Vernon 2003).

**2.** Appellant represented himself at the motion to suppress hearing and at trial. The trial court appointed counsel to appellant for this appeal. The trial court later granted appellant's request to represent himself on appeal. Appellant has filed his pro se briefing and the State has responded.

suspicion to believe that an individual is violating the law. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App.2002). The burden is on the State to elicit testimony showing sufficient facts to create a reasonable suspicion. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex.Crim.App.2001).

 Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Id.* This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.* A reasonable-suspicion determination is made by considering the totality of the circumstances. *Id.* Whether a search is reasonable is a question of law that we review de novo. *See Castro v. State,* 202 S.W.3d 348, 355 (Tex.App.–Fort Worth 2006).

Here, appellant contends that the State did not show that Officer Carr had a reasonable suspicion to believe that he was violating the law when the officer stopped appellant. In his opening brief, appellant asserts that Officer Carr's testimony at the suppression hearing "gave only a conclusionary [sic] statement regarding littering and not specific articulable facts to support a reasonable suspicion that he had committed the offense of littering."

██ In *Castro v. State,* the Court of Criminal Appeals explained that the amount of specific and subjective detail that an officer must give to demonstrate that a detention is reasonable depends on the nature of the offense. *See* 227 S.W.3d 737, 742 (Tex.Crim.App.2007). When the determination of whether an offense has been committed requires an officer to make a subjective determination, then the officer must provide a detailed account of

his observations to support that determination. *See id.*

The *Castro* court discussed in detail its earlier decision in *Ford v. State. Id.* at 742–43. In *Ford,* the police officer testified, without elaborating, that he stopped the defendant's vehicle because the defendant was following another vehicle too closely. 158 S.W.3d 488, 491 (Tex.Crim. App.2005). The *Ford* court concluded that the officer's conclusory testimony was not sufficient to support a finding of reasonable suspicion because the offense of following another vehicle too closely requires an officer to make a subjective determination based on a number of statutory factors. *See id.* at 493–94; *see also* TEX. TRANSP. CODE ANN. § 545.062(a) (Vernon 1999).

In contrast, the offense involved in *Castro* was one requiring the officer to make an objective determination. *See* 227 S.W.3d at 742. There, the officer testified that the defendant's vehicle was stopped because the defendant failed to signal a lane change, which is a traffic offense. *Id.* at 739–40. In distinguishing *Ford,* the *Castro* court explained that "in cases involving offenses such as failure to signal a lane change, a court can determine whether an officer's determination that a driver committed a traffic violation was objectively reasonable without being presented with a detailed account of the officer's observations." *Id.* at 742.

Here, Officer Carr testified that he detained and then arrested appellant because he observed appellant "littering pieces of paper on the street." The officer stated that he later determined that the paper was a torn-up bus pass. Officer Carr confirmed that "littering" is a criminal offense. At the conclusion of the hearing, the trial court orally found that Officer Carr had detained appellant because the

officer saw appellant commit a violation of the law, more particularly, a "class C misdemeanor."

Health and Safety Code section 365.012(a) provides that a person commits the offense of illegal dumping if he "disposes or allows or permits the disposal of litter or other solid waste at a place that is not an approved solid waste site, including a place on or within 300 feet of a public highway, on a right-of-way, on other public or private property, or into inland or coastal water of the state."[3] TEX. HEALTH & SAFETY CODE ANN. § 365.012(a) (Vernon Supp.2008). Illegal dumping is a class C misdemeanor if the litter or other solid waste weighs five pounds or less or has a volume of five gallons or less. *See id.* § 365.012(d).

With respect to our discussion, the offense of illegal dumping is more like the offense of failure to signal a lane change discussed in *Castro* than the offense of following too closely discussed in *Ford*. The nature of illegal dumping does not require an officer to make a subjective determination. A court can decide whether an officer's illegal dumping determination was objectively reasonable without being presented with a detailed account of the officer's observations.

In any event, Officer Carr's testimony passes muster under *Ford's* subjective offense standard. Officer Carr provided specific, articulable facts regarding his observations. Officer Carr testified that he saw appellant littering pieces of a torn up paper in the street.

Under its common meaning, the term "littering" connotes a purposeful, or at a minimum a reckless, act. From this, the trial court could have reasonably inferred

that appellant was disposing of the torn paper. In addition, the statutory definition, and logic, indicate that the pieces of paper discarded by appellant—which Officer Carr discovered was a torn-up bus pass—constituted "litter" or "solid waste." *See id.* § 365.011(6),(9) (Vernon 2001). Also, common sense, as well as the statute, dictates that the street was not "an approved solid waste site." *See id.* § 365.011(1). In sum, the State presented sufficient evidence to support a conclusion that Officer Carr had reasonable suspicion to stop appellant for the offense of illegal dumping.

## C. Article 2.13

▮ Appellant also contends that the trial court erred by denying his motion to suppress because the State did not show that Officer Carr gave "notice to some magistrate of all offenses [including "littering"] committed within the officer's jurisdiction, where the officer has good reason to believe there has been a violation of the penal law," as provided in Code of Criminal Procedure article 2.13(b)(3). *See* TEX. CODE CRIM. PROC. ANN. art. 2.13(b)(3) (Vernon 2005). Appellant argues that the lack of a article 2.13(b)(3) showing demonstrates that Officer Carr did not have a reasonable suspicion to stop and detain him for littering.

Appellant did not raise this argument either in his pretrial motion or at the motion to suppress hearing. Appellant makes this argument for the first time on appeal.

▮ A motion to suppress is nothing more than a specialized objection to the admissibility of evidence. *Galitz v. State,* 617 S.W.2d 949, 952 n. 10 (Tex.Crim.App.

---

**3.** Officer Carr also made a remark during the motion to suppress hearing indicating that

littering is a municipal code violation.

1981). To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX.R.APP. P. 33.1(a)(1). A defendant's appellate contention must comport with the specific objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App.2002). An objection stating one legal theory may not be used to support a different legal theory on appeal. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App.1995). A reviewing court will not consider errors, even of constitutional magnitude, not called to the trial court's attention. *Id.* Because appellant did not raise the article 2.13 issue in conjunction with his motion to suppress, appellant waived his right to argue the point on appeal. *See* TEX.R.APP. P. 33.1(a)(1).

We overrule appellant's first issue.

## D. The Arrest

In his second issue, appellant further challenges the denial of his motion to suppress on the ground that his arrest was not "lawful." Appellant contends that Officer Carr had no probable cause to arrest him for failing to produce written identification. Appellant asserts that he was not required to identify himself prior to being arrested and that he was not required to produce written identification. Appellant cites Penal Code section 38.02, which provides that a person is required to provide identifying information to a peace officer only after that person has been lawfully arrested. *See* TEX. PENAL CODE ANN. § 38.02(a) (Vernon 2003).

Contrary to appellant's contention, the record reveals that Officer Carr did not arrest him for failing to produce written identification. Officer Carr testified unequivocally at the motion to suppress hearing that he arrested appellant for littering.

Officer Carr explained that police department policy does not allow officers to give written citations for an offense when the offender cannot produce written identification to verify the offender's identity. Officer Carr testified that he would have given appellant a citation for littering if appellant had produced identification, but he did not testify that he arrested appellant for the offense of failure to identify. Accordingly, appellant's contention is unsupported by the record and without merit.

We overrule appellant's second issue.

## Objection to Testimony of State's Forensic Chemist

■ In his third issue, appellant contends that the trial court erred by allowing the testimony of the State's forensic chemist, who performed a chemical analysis on the controlled substance found in appellant's shirt pocket. On appeal, appellant argues that the chemist's testimony was inadmissible because the chemical analysis was performed at a laboratory that was not accredited at the time of the analysis.

Appellant relies on Code of Criminal Procedure article 38.35(d)(1), which provides that a forensic analysis of physical evidence and expert testimony relating to the evidence are not admissible in a criminal action if, at the time of the analysis, the crime laboratory conducting the analysis was not accredited by the Department of Public Safety. TEX.CODE CRIM. PROC. ANN. art 38.35(d)(1) (Vernon Supp.2008). On cross-examination, the State's chemist acknowledged that the laboratory was not accredited at the time he performed the forensic analysis. Appellant, however, did not object to the admission of the chemist's testimony on the basis that the laboratory was not accredited. Instead, immediately following the chemist's statement that the laboratory was not accredited, appellant made the following objection: "Your Hon-

or, at this time, I object for this evidence to be admissible [sic] because it's been tampered with, the chain of custody has been broken." The trial court overruled the objection.

To preserve error, an objection on appeal must comport with the objection made in the trial court. *See Guevara v. State*, 97 S.W.3d 579, 583 (Tex.Crim.App.2003); *see also* TEX.R.APP. P. 33.1(a). An objection may be preserved if the specific grounds for the objection are apparent from the context. *See* TEX.R.APP. P. 33.1(a); TEX.R. EVID. 103(a)(1); *see also Heidelberg v. State*, 144 S.W.3d 535, 538 (Tex.Crim.App. 2004).

In his reply brief, appellant asserts that, when read in context, his chain-of-custody objection in the trial court was sufficient to preserve his article 38.35 lack-of-accreditation complaint on appeal. To support this assertion, appellant cites his cross-examination of the chemist preceding his chain-of-custody objection, which focuses on whether the chemist was "accredited" or qualified and on whether the laboratory was accredited.

A review of the record indicates that this is not a case in which the claimed objection is apparent from the context. Appellant's stated objection in no manner referenced the substance of the preceding cross-examination and does not naturally segue from that line of questioning. Instead, appellant's objection specifically referenced, without any explanation, a distinct evidentiary objection from the one that he now asserts on appeal. Thus, appellant has failed to preserve his objection that the trial court erred by admitting the

testimony of the State's forensic chemist.[4] *See* TEX.R.APP. P. 33.1(a).

We overrule appellant's third issue.

### Amendment of Indictment

■ In his fourth issue, appellant contends that the trial court erred by permitting one of the enhancement paragraphs in the indictment to be amended.

The State indicted appellant in June 2004. The indictment contained two enhancement paragraphs. One of these paragraphs contained allegations that appellant had been previously convicted of aggravated robbery on February 19, 1979.

On August 18, 2004, the State filed a motion to amend the indictment. The State requested that the date of conviction for the aggravated robbery offense be corrected from February 19, 1979 to February 8, 1979. Attached to the motion was a certificate of service indicating that the motion had been served on defense counsel. The trial court signed an order granting the motion, which also indicated that notice of the motion had been given to the defense.

The indictment contains a hand-written interlineation changing the date in the enhancement paragraph from February 19, 1979 to February 8, 1979. Next to the correction are what appear to be the initials of the presiding judge. The indictment does not reflect the date of the correction.

A visiting judge tried appellant's case in June 2007. At the beginning of the punishment phase, appellant objected to the amendment of the enhancement paragraph on the ground that he had not been given notice of the amendment.

---

**4.** Appellant mentioned the accreditation issue in his motion to suppress. However, the issue was not adjudicated at the motion to suppress hearing, and the trial court made no ruling with respect to that ground.

The State argued that appellant had received timely notice. The State informed the visiting judge that, although the presiding judge had made the hand-written correction to the indictment the week before, the motion to amend the indictment had been filed and granted in August 2004. The State pointed out that the motion to amend indicated that it was sent to the defense at the time it was filed. Based on this, and on the fact that the order granting the motion was contained in the court's file, to which appellant had access, the trial court denied appellant's objection to the amendment of the indictment.

Texas Code of Criminal Procedure article 28.10 prescribes the following procedure for amending an indictment:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date of the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

Tex.Code Crim. Proc. Ann. art. 28.10(a)-(c) (Vernon 2006). On appeal, appellant complains that the indictment's amendment runs afoul of article 28.10 because the amendment occurred after trial began, over the defense's objection.[5]

 To support his claim, appellant points out that the hand-written correction on the face of the indictment was not dated. This, however, does not establish that the indictment was improperly amended after trial began. "It is generally presumed on appeal that the court ruled correctly and that the appellant must show error." *Hall v. State*, 829 S.W.2d 407, 410–11 (Tex.App.-Waco 1992, no pet.) (citing *Hardin v. State*, 471 S.W.2d 60, 63 (Tex.Crim.App.1971)). "It is appellant's burden to not only preserve the alleged error for review, but to present a record of the alleged error sufficient for us to review it and determine if it was error and if so whether the defendant was harmed." *Montoya v. State*, 43 S.W.3d 568, 572 (Tex. App.-Waco 2001, no pet.); *see also Word v. State*, 206 S.W.3d 646, 651–52 (Tex.Crim. App.2006) ("It is usually the appealing party's burden to present a record showing properly preserved, reversible error."); *McCarty v. State*, 227 S.W.3d 415, 418 (Tex.App.-Texarkana 2007) ("A defendant has the burden to present a record on appeal that shows he is entitled to relief."), *aff'd*, 257 S.W.3d 238 (Tex.Crim.App.2008).

The absence of a date for the hand-written correction on the face of the indictment does not establish that the amendment was made after trial began. The August 2004 motion to amend and accom-

---

5. As stated, appellant objected in the trial court that he did not have notice of the amendment. Based on the State's motion to amend and the trial court's order, the trial court determined that appellant did have notice of the amendment. The trial court's ruling is supported by the motion and the order as found in the record. Moreover, appellant's complaint on appeal is not one of notice; rather, he complains that the indictment was amended after trial began. Thus, it is questionable whether appellant has preserved error. *See* Tex.R.App. P. 33.1(a).

panying order granting the amendment would arguably suggest that the amendment was made before trial. In any event, appellant has failed to show error with regard to the timeliness of amendment.[6]

 In addition, variances between an indictment and the proof of cause numbers, courts, and dates of conviction in enhancement paragraphs have been held not to be material. *See Freda v. State*, 704 S.W.2d 41, 42–43 (Tex.Crim.App.1986). It logically follows that, had the date of appellant's prior conviction not been corrected in the indictment, the variance would have been immaterial. A variance in dates of conviction is not fatal when there is no surprise or prejudice to the defendant. *Benton v. State*, 770 S.W.2d 946, 947 (Tex. App.-Houston [1st Dist.] 1989, pet. ref'd).

The record does not reveal that appellant was surprised or prejudiced by the variance. In addition to the State's motion to amend the indictment, the State informed appellant of its intent to use the prior conviction in its "Notice of Intention to Use Evidence of Prior Convictions and Extraneous Offenses," which was sent to appellant and filed with the trial court on August 18, 2004, nearly three years before trial. The notice reflects the correct date of the prior aggravated robbery conviction. Thus, even if the trial court had erred with respect to amending the indictment, we conclude that no surprise, prejudice, or harm resulted.

We overrule appellant's fourth issue.

## Conclusion

We affirm the judgment of the trial court.

---

**6.** We also note that the Amarillo Court of Appeals has held that article 28.10 does not apply to an amendment of an enhancement allegation because the enhancement allegation was "unessential to the validity of the indictment" and, thus, "comparable to surplusage." *Johnson v. State*, 214 S.W.3d 157, 158–59 (Tex.App.-Amarillo 2007, no pet.). The Fourteenth Court of Appeals has similarly concluded, in an unpublished opinion, that, because alterations were made to enhancement allegations, rather than to an element of the charged offense, article 28.10 did not apply to the alteration. *See Barnes v. State*, Nos. 14-05-00144-CR, 14-05-00145-CR, 2006 WL 2548186, \*3–4 (Tex.App.-Houston [14th Dist.] Sept. 5, 2006, pets. ref'd) (mem. op., not designated for publication).