**Opinion issued July 16, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00320-CR

———————————

**RAYMOND ARRENDONDO MORENO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1316184**

---

## O P I N I O N

A jury convicted Raymond Arrendondo Moreno of the first degree felony of

continuous sexual abuse of a child. *See* TEX. PENAL CODE ANN. § 21.02(b) (West

Supp. 2012). The trial court sentenced Moreno to life in prison. Moreno appeals,

asserting that the trial court erred by (1) denying his motion to suppress evidence based on an illegal seizure and (2) admitting, over Moreno's objection, explicit photographs of the complainant found on Moreno's cell phone. Finding no reversible error, we affirm.

## Background

Deputy James Savell of the Harris County Sheriff's Office stopped Moreno for a traffic violation. Savell testified that he was driving on Interstate 10, when he passed Moreno's car. Savell noticed Moreno, a middle-aged Hispanic male, look over at Savell, then lower his head and speak to his three passengers. Savell then observed the people in the back seat reach down and look in Savell's direction. Savell positioned his car in front of Moreno's and observed him through the rear-view mirror. Savell saw Moreno fail to signal a lane change and twice fail to maintain a single lane, and Savell pulled him over for these traffic violations.

As Savell walked toward Moreno's vehicle, he noticed the occupants making furtive movements, bending and reaching, as if to conceal weapons or narcotics from view. Through the car windows, Savell could see several pharmaceutical bags and medicine bottles with the labels removed. Based on his training and experience, Savell suspected that Moreno and his passengers may have been illegally dealing prescription drugs, and this caused him to shift his

2

focus from Moreno's traffic violations to the pill bottles. Savell asked the passenger in the front, a girl in her early teens who would become the complainant in this case, for identification. She replied that she did not have identification. Savell separated the complainant and the other passengers from Moreno while he investigated. Savell spoke briefly with Moreno, but the complainant was the first person he interviewed.

The complainant told Savell that she was thirteen years old. She did not know Moreno by name; when Savell asked what she called the driver of the car, she replied, "Babe." The complainant told Savell that she had known Moreno for around a year and that he had had sexual intercourse with her at least twelve times.

The complainant was taken to the Children's Assessment Center for a forensic interview. She also underwent a sexual assault examination, which showed abrasions to her vagina. The doctor who examined her testified at trial that the abrasions were caused by a penis penetrating the complainant's vagina.

After the complainant's forensic interview and exam, Savell obtained search warrants for Moreno's home and electronics. Officers found condoms with both Moreno's and the complainant's DNA. They also found, on Moreno's cell phone, pictures of the complainant, including some in which she was on a bed nude, and others of her genitalia.

3

At trial, the complainant testified that the first time that she had sexual intercourse with Moreno was the night before her thirteenth birthday, November 6, 2010. She testified that she did not see Moreno again until after school ended in 2011. The complainant testified that in the summer of 2011, she stayed with Moreno almost every week for a few days at a time, and that Moreno had sexual intercourse with her between ten and fifteen times. Although she could not remember every date on which Moreno had sexual intercourse with her, the complainant said that the sexual intercourse occurred on the days that Moreno photographed her. The complainant also testified that the last time they had intercourse was the night before Moreno was arrested, August 9, 2011.

The forensic analysis of Moreno's cell phone revealed that the photographs of the complainant were taken on several different dates. The first was taken on November 6, 2010. The next images of the complainant, including photographs of the complainant's genitalia, were taken after the school year ended. A forensic analyst testified that these photographs were taken on several different dates between June 6, 2011 and July 30, 2011.

The jury found Moreno guilty of continuous sexual abuse of a child, and the trial court sentenced Moreno to life in prison. Moreno appealed.

**Motion to Suppress**

In his first issue, Moreno contends the trial court erred by denying his motion to suppress and admitting evidence obtained from the complainant and during the execution of the search warrants, because the evidence was obtained as a result of a traffic stop that violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *See* U.S. CONST. amend. XIV. Specifically, Moreno claims Savell stopped him because of his race, in violation of the Equal Protection Clause. The State responds that Moreno did not preserve the issue for review, because his argument on appeal does not comport with the ground for suppression that he raised in the trial court.

A motion to suppress is a specialized objection to the admissibility of evidence. *Simmons v. State*, 288 S.W.3d 72, 76 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981)); *Obryant v. State*, No. 01-08-00740-CR, 2009 WL 4724667, at *6 (Tex. App.—Houston [1st Dist.] Dec. 10, 2009, pet. ref'd) (mem. op., not designated for publication) (citing *Galitz*, 617 S.W.2d at 952 n.10). To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a)(1)(A); *Simmons*, 288 S.W.3d at 77. On appeal, the appellant's

contention must comport with a specific objection made at trial. *Simmons*, 288 S.W.3d at 77 (citing *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002)); *Obryant*, 2009 WL 4724667, at *6 (citing *Wilson*, 71 S.W.3d at 349). Equal protection claims are subject to this rule. *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002). The Court of Criminal Appeals has "consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence[,] . . . even though the error may concern a constitutional right of the defendant." *Id.* (footnotes omitted).

Moreno's argument on appeal does not comport with his objection in the trial court. On appeal, Moreno contends that his equal protection rights were violated because Savell initiated the traffic stop based on Moreno's race, and, therefore, any evidence obtained as a result of the illegal stop is inadmissible. Moreno did not make the same argument in the trial court. In his motion to suppress, Moreno argued that Savell's detention became unreasonable because he detained Moreno longer than was necessary to investigate a simple traffic violation. Moreno's motion to suppress stated:

> On August 10, 2011, law enforcement officers stopped the vehicle being driven by the Defendant for a traffic violation. Once the officers had stopped the Defendant's vehicle and approached it, however, they did not issue a citation to the Defendant. Additionally, although the officers observed prescription pill bottles in the interior

of the car, there was nothing to suggest that the prescriptions weren't valid.

> Nonetheless, the officers, based on a mere hunch that something may be amiss, ordered the occupants, including the defendant and the complainant, out of the car and began questioning them. These questions elicited responses and evidence that were the result of an unreasonable detention and which served to develop incriminating evidence against the Defendant. Such prolonged duration of the detention violated the Fourth and Fourteenth Amendments to the United States Constitution, article I, section 9 of the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure because there were no articulable facts to support a reasonable suspicion to justify the continued detention and investigation. *St. George v. State*, 237 S.W.3d 720 (Tex. Crim. App. 2007).

The day after the motion to suppress hearing, immediately before trial began, Moreno offered the following summary of his position on the motion to suppress:

> The short version, as I read [*Davis v. State*, 947 S.W.2d 240 (Tex. Crim. App. 1997),] it states what we said, what I argued yesterday, that a legal stop—and we did not argue with the stop itself, even though it was a pretext—a legal stop for traffic offenses, or any other stop can, after a certain period of time, become unreasonable. And that's *Davis v. State*. The other is Florida, 463, U.S. 491, 1983 [sic]. It said that there was no simple test for when and how long a temporary detention becomes unreasonable, but two of the factors were moving the suspect or the defendant and the length of time for the encounter. We ask those to be included in the record for whatever purposes.

Moreno never made an equal protection argument and never claimed Savell made the traffic stop based on Moreno's race. Because an equal protection claim must be raised by a timely and specific objection before the trial court and Moreno

7

did not object or otherwise raise the equal protection issue in conjunction with his motion to suppress, we hold that his complaint is not preserved for review. *See Saldano*, 70 S.W.3d at 889–90 (holding appellant waived complaint that admission of expert testimony concerning recidivism and race violated his equal protection rights when he failed to object below); *see also Obryant*, 2009 WL 4724667, at *6 (holding appellant's argument on appeal that traffic stop based on his race violated his equal protection rights was not preserved because appellant did not raise equal protection issue in his motion to suppress).

We overrule Moreno's first issue.

### Admission of Photographs

Moreno contends in his second issue that the trial court erred by admitting nude photographs of the complainant recovered from his cell phone, over his Rule 403 objection, because the evidence was unfairly prejudicial and duplicative of evidence already admitted.

### A.    Standard of Review

We review a trial court's decision to admit evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006); *Wolfberg v. State*, 73 S.W.3d 441, 443 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). A trial court abuses its discretion only if its decision is "so clearly wrong as

to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). "When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

## B.    Texas Rule of Evidence 403

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. "Unfair prejudice" refers to more than the fact that the evidence has an adverse or detrimental effect on the defendant's case. *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). "Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it." *Id.* Rather, unfair prejudice refers to "an undue tendency to suggest a decision on an improper basis, commonly an emotional one." *Id.* When undertaking a Rule 403 analysis, "a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any

9

tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

## C. Law Applicable to Continuous Sexual Assault of a Child

To establish continuous sexual abuse of a child, the State must prove that, "during a period that is 30 or more days in duration," the defendant "commit[ted] two or more acts of sexual abuse . . . at the time of the commission of each of the acts of sexual abuse, the [defendant was] 17 years of age or older and the victim [was] a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b); *Smith v. State*, 340 S.W.3d 41, 47 (Tex. App. —Houston [1st Dist.] 2011, no pet.). An "act of sexual abuse" includes, as relevant here, aggravated sexual assault of a child under section 22.021(a)(2)(B) of the Texas Penal Code. TEX. PENAL CODE ANN. § 21.02(c)(4); *see Smith*, 340 S.W.3d at 47.

A person commits aggravated sexual assault of a child if he intentionally or knowingly causes his sexual organ to contact or penetrate the sexual organ of a

child younger than fourteen years of age. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), 22.021(a)(2)(B). Although the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that one act of sexual abuse occur on at least the 29th day after the day of another act of sexual abuse. *Smith*, 340 S.W.3d at 48 (citing TEX. PENAL CODE ANN. § 21.02(d) ("The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.")).

**D. Analysis**

Under the first two factors of Rule 403 balancing test, we examine the probative value of the evidence in question and the State's need for the evidence. *Gigliobianco*, 210 S.W.3d at 641. "Probative value refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Id.* The photographs have probative value because they, together with the complainant's testimony that Moreno had intercourse with her on the dates he photographed her, establish the dates on which Moreno had sexual intercourse with the complainant. *See* TEX. PENAL CODE ANN. § 21.02(d); *Smith*, 340 S.W.3d at 48. The State's need for this evidence was great.

11

The complainant could not recall the precise dates on which Moreno had intercourse with her, but she testified that Moreno had sex with her on the days he photographed her. Thus, the photographs establish that the acts of sexual abuse occurred during a period that was thirty or more days in duration, a necessary element of the crime charged.[1] Additionally, in prosecutions for sexual offenses, a successful conviction often depends on whether the jury believes the complainant. *See Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). Therefore, photographic evidence corroborating the complainant's testimony was highly probative and necessary to the State's case. These factors weigh strongly in favor of admissibility.

Under the third factor, we examine the unfair prejudice, that is, the tendency of the evidence to suggest decision on an improper basis. *Gigliobianco*, 210 S.W.3d at 641. Evidence might have this tendency if "it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Id.* The photographs likely did arouse the jury's hostility for Moreno because they were disturbing, graphic images and evidence of the separate offense of possession of child pornography. *See Wheeler*, 67 S.W.3d at 889 (noting that

---

[1] The testimony of the forensic analyst demonstrated that the photographs were taken on the following dates: November 6, 2010; June 11, 18, 25, and 26, 2011; and July 9 and 30, 2011.

12

"evidence of an extraneous sexual offense will always carry emotional weight and the danger of impressing the jury in an irrational and indelible way"). Thus, this factor weighs against admissibility.

In considering the fourth factor, we examine the tendency of the evidence to confuse or distract the jury from the main issue. *Gigliobianco*, 210 S.W.3d at 641. "Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues." *Casey*, 215 S.W.3d at 880. Here, the testimony about the photographs was not lengthy and did not distract the jury's attention from the main issue. Rather, the photographs related directly to an element of the offense. *See Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003) (holding that evidence of cocaine in defendant's blood could not distract jury from indicted offense of manslaughter because it was "proof of the indicted offense"). This factor weighs in favor of admissibility.

Under the fifth factor, we weigh any tendency of the evidence to be given undue weight by a jury that has not been properly equipped to evaluate the probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641. Here, although the forensic examiner's testimony about recovering the photographs from Moreno's cell phone was somewhat technical in nature, the photographs

themselves were not technical or scientific in nature. The photographs and the dates on which they were taken were matters "comprehensible by laypeople." *Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd). Thus, nothing suggests that the jury was not equipped to evaluate the probative force of the photographs. This factor weighs in favor of admissibility.

Finally, under the sixth factor, we consider the time required to develop the evidence. *Gigliobianco*, 210 S.W.3d at 641. As mentioned above, the testimony of the forensic examiner was not lengthy. Thus, the presentation of the photographs did not "consume an inordinate amount of time." *Id.* at 641–42. This factor weighs in favor of admissibility.

Balancing all of the factors, we conclude that the trial court did not abuse its discretion in determining the testimony was not substantially more prejudicial than probative under Rule 403. *See Garreans v. State*, No. 05-06-00934-CR, 2008 WL 311002, at *7–8 (Tex. App.—Dallas Feb. 5, 2008, no pet.) (op., not designated for publication) (holding trial court did not abuse discretion in admitting images from appellant's computer depicting child pornography and incest website where appellant denied sexual abuse).

We overrule Moreno's second issue.

14

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish. TEX. R. APP. P. 47.2(b).